UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| VP LOUISVILLE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:17-CV-621-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| NBH BANK, N.A., | ) | **ORDER GRANTING MOTION TO** |
| | ) | **DISMISS** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendant's Motion to Dismiss for Failure to State a Claim [R. 5]. For the reasons set forth below, the Court will grant the motion.

## I.    Background

This case is the latest volley in a long history of protracted litigation between the parties. Briefly, the relevant facts are as follows. On October 29, 2012, the parties executed a settlement agreement resolving a foreclosure action which NBH Bank, N.A. ("NBH") had brought against VP Louisville, LLC ("VP Louisville") in Jefferson Circuit Court (the "state court action") relating to a $4,550,000.00 loan NBH had made to VP Louisville. [R. 5-13 p. 3] At the time of the execution of the settlement agreement, the subject property of the foreclosure action, a hotel, was under a court-appointed receivership administered by Smiling Hospitality, Inc. ("Receiver") (which was appointed as Receiver by the state court on July 12, 2012). [R. 5-12 p. 2] The settlement agreement included two provisions important to this case: 1) a mutual release of "any claims, demands, obligations, liabilities of [sic] causes of action relating to the Loan, the Loan Documents, the Kentucky Litigation," and another lawsuit not relevant here; and 2) a provision stating that upon timely payment by VP Louisville of the "Settlement Sum" (the outstanding

obligations owed by VP Louisville to NBH), "all funds held by the Receiver . . . will be turned over to the Borrower [VP Louisville]." [R. 9-1 p. 2] The Settlement Sum was payable on December 14, 2012 (the "Payment Date"). [R. 91 p. 1] The Receiver was not a party to the Settlement Agreement.

Having already filed regular monthly reports for each of the five months of the receivership detailing its actions and expenditures, the Receiver filed its final report with the Jefferson Circuit Court on January 11, 2013 (a month after the Payment Date), with a supplemental report filed on August 13, 2013. [R. 5-13 p. 3; R. 5-3 p. 2] Nevertheless, the parties continued litigating over issues relating to the receivership for years, culminating in a battle over attorney's fees.

On April 29, 2016, the Jefferson Circuit Court ruled that the attorney's fees sought by the Receiver for certain legal services were partly unreasonable, and essentially disallowed $112,431.00 in fees and expenses to be paid out of the receivership funds. [R. 5-3; R. 5-13 p. 5] The law firm which performed the legal work and charged these attorney's fees complied with this order by refunding the Receiver through a $45,195.00 write-off of unpaid fees, and a $67,236.00 cash refund. [R. 5-13 p. 5] Before this cash refund, the receivership account had a zero balance. *Id.*

The Receiver then filed a motion seeking discharge and asking the court how to disburse the $67,236.00. [R. 5-13 p. 5] VP Louisville promptly filed a motion requesting that the court enter an order consistent with the April 2016 order, and claiming that according to its calculations, the refund amount should be $134,724.39. [R. 5-13 p. 6] NBH did not object to the refund amount of $112,431.00, but sought a portion of the $67,236.00 (the only cash remaining) to repay a $60,000.00 loan which it had previously made to the Receiver. *Id.* On July 22, 2016,

the court directed the Receiver to pay $60,000.00 to NBH (but did not make both finality findings under Kentucky Rule of Civil Procedure 54.02). *Id.*

On August 3, 2016, VP Louisville filed a "Response to Motion to Discharge Receiver and VP Louisville LLC's Motion for Attorneys' Fees, Pre-Judgment and Post-Judgment Interest" (the "August 2016 VP Louisville Motion"). [R. 5-5]  This brief document stated in relevant part that, based on the Court's April 29, 2016 order, VP Louisville requested entry of an Order and Judgment in the amount of $147,126.86, along with interest. [R. 5-5 pp. 2, 3]  Because the Court had directed the Receiver to disburse $60,000.00 to NBH to re-pay the loan, the Receiver had no funds to defend against VP Louisville's most recent motion, so NBH agreed, pursuant to a previous indemnity agreement, that the Receiver could use the $60,000.00 to defend VP Louisville's latest motion.  The Jefferson Circuit Court denied the August 2016 VP Louisville Motion after VP Louisville failed to appear for the hearing convened to hear this motion, and the Receiver was discharged. [R. 5-6 p. 1]

VP Louisville filed a response to the order discharging the Receiver, and renewed its August 2016 motion. [5-13 p. 7]  The Receiver responded. *Id.*  Then, on October 18, 2016, VP Louisville filed a second motion, a "Memorandum in Support of Renewed Motion of VP Louisville LLC's for Judgment Against Receiver Smiling Hospitality, Inc.," this time seeking judgment in the amount of $144,668.03. [R. 5-7]  The Jefferson Circuit Court likewise denied this motion on December 7, 2016, ordering that the Receiver "pay its local counsel [in accordance with the previous orders], and return any remaining funds in the Receivership Account to NBH" to pay, in part, the $60,000.00 loan made by NBH to the Receiver. [R. 5-8 p. 1][1]  VP Louisville appealed this order, arguing that the trial court was required to state the

---

[1] It appears that NBH has not been fully repaid for the $60,000.00 loan. [*See* R. 13 p. 3, n.1]

evidence upon which it relied in approving the attorney's fees which it did approve. [R. 5-13 p. 8] In the meantime, VP Louisville filed the instant lawsuit, bringing claims for tortious interference with prospective business advantage and economic relationships; breach of contract as to both the letter agreement and the settlement agreement, breach of the covenant of good faith and fair dealing, and punitive damages. [R. 1] NBH filed a Motion to Dismiss [R. 5] pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the claim for breach of contract as to the settlement agreement was issue precluded, and that all the rest of the claims were expressly released. On June 28, 2019, the Kentucky Court of Appeals affirmed the Jefferson Circuit Court. [R. 5-13]

## II. Analysis

The Court agrees with NBH that the Complaint fails to state a claim upon which relief can be granted. VP Louisville claims in Count III that NBH failed to turn over funds held by the Receiver pursuant to the terms of the Settlement Agreement, that the Receiver spent sums in violation of the Settlement Agreement, and that the Receiver failed to pay certain operational costs and property taxes for the hotel. But this breach of contract claim as to the settlement agreement is premised upon issues that have already been litigated in the state court action and whose re-litigation is therefore barred by issue preclusion. That is, the state court action already litigated the issue of the proper disposition of all funds held by the Receiver, including the refunded attorney's fees. Similarly, the rest of the claims are barred by the release contained in the settlement agreement. The court will address first the claim barred by issue preclusion, then the claims barred by the release.

### A. Issue Preclusion of Count III (Breach of Contract as to the Settlement Agreement)

The parties agree on substantially the same elements of issue preclusion applicable to the December 7, 2016 state court Order under Kentucky law:

(1) The issue in the second case must be the same as the issue in the first case;

(2) The issue must have been actually litigated

(3) The issue must have been actually decided;

(4) The issue must have been necessary to the court's judgment [NBH adds "and adverse to the party to be bound"]; and

(5) At least one party [NBH adds "to be bound in the second case"] must have been a party in the first action.

*See* R. 5 p. 8 (citing *Preferred Care of Del., Inc. v. Quarles*, 2016 U.S. Dist. LEXIS 82239, *7); R. 9 p. 4 (citing *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 374 (Ky. 2010). VP Louisville appears to cede that the last factor is met, since it states that the parties here are identical (and that this is more than issue preclusion requires). [R. 9 p. 4] However, the other factors are disputed. VP Louisville disagrees that the issue presented by this claim is the same as the issue in the state court action (and thus necessarily disagrees that the issue was actually litigated, actually decided, and necessary to the state court's judgment). *Id.*

The Court is not persuaded. In its December 7, 2016 order denying VP Louisville's second motion seeking judgment related to the Receiver's attorney's fees and disbursement of receivership funds following the order on attorney's fees, the Jefferson Circuit Court held that the Receiver was authorized to pay its additional attorney's fees caused by VP Louisville's motions and return any remaining funds in the receivership account to NBH [to re-pay the $60,000.00 loan NBH made to the Receiver.] The Court also specifically recounted that the

Receiver was discharged on October 6, 2016, and further found that that the Receiver (along with its officers, agents, employees, attorneys, and representatives) had "duly and fully complied with their obligations [in the state court action] and are relieved from all liabilities in connection with the lawsuit." [R. 5-13 p. 7]  No doubt this is why Plaintiff did not sue the Receiver in this action.

Further, as recounted by the Kentucky Court of Appeals in its opinion upholding the order of the Jefferson Circuit Court, the Receiver filed reports every month during the receivership "detailing its actions during that month." [R. 5-13 p. 3]  The opinion also made clear that the Receiver had many expenses to pay, as the first Receiver report (filed on July 20, 2012) "described deplorable conditions at the hotel, including a methamphetamine lab," and the Receiver was also entitled to pay reasonable attorney's fees incurred in the course of the receivership. [R. 5-13 pp. 3, 2]  As mentioned, the Receiver filed its final report on January 11, 2013 (a month after the Payment Date), and a supplemental report filed on August 13, 2013. [R. 5-13 p. 3; R. 5-3 p. 2]  Even though VP Louisville objected to every one of the Receiver's reports (filing a total of over thirty motions claiming the Receiver engaged in misconduct, thereby causing the Receiver to incur additional costs in the form of attorney's fees), "[t]he trial court at no time found [the Receiver] engaged in any misconduct." [R. 5-13 p. 3]  In other words, the state court specifically reviewed all amounts spent by the Receiver out of the receivership account, along with VP Louisville's objections (which should have covered **any** objections to **any** expenditures from the receivership account), found the expenditures to be proper (with the exception of some of the attorney's fees, as discussed) and ordered the remainder of funds, after payment of the Receiver's attorney's fees defending VP Louisville's additional motions on the issue, be returned to NBH in partial repayment of its loan to the Receiver.  NBH claims that VP

Louisville did not object to NBH's motion for the $60,000.00 repayment of NBH's loan, and that "[i]t was not until later in the case that VP moved the state court to order [the Receiver] to refund to VP all of [the] unreasonable attorney fees." [R. 5 p. 11] But in any event, the state court clearly noted that the only remaining issue with regard to how the funds in the receivership account were disbursed was the issue of attorney's fees. [R. 5-13 p.3]

Thus, it is clear that the parties actually litigated, and the state court's previous orders actually decided, the issues of the propriety of the Receiver's spending of all amounts in the Receivership Account, and disbursement of *all* remaining funds on deposit with the Receiver – both those remaining soon after the Payment Date and those remaining at the very end of the state court action. Those issues encompass the underlying issue in VP Louisville's breach of contract claim based on breach of the settlement agreement – namely, the question of whether VP Louisville is entitled to funds leftover in the Receivership Account.

VP Louisville cites to authority for the proposition that the "true requirement [for *res judicata* to bar a suit] is that the causes of action in the two suits shall be the same." [R. 9 p. 8 (quoting *3D Enterprises Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005))] However, as NBH points out, that authority appears to be describing *claim* preclusion, not issue preclusion (also known as collateral estoppel). Further, the recent seminal case on claim and issue preclusion under Kentucky law, *Miller v. Admin. Office of Courts*, 361 S.W.3d 867 (Ky. 2011), described an identity of the two causes of action as an element of *claim* preclusion, but not as an element of *issue* preclusion. *See Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 872 (Ky. 2011). Thus, as the Eastern District of Kentucky has stated, "Kentucky law does require the application of collateral estoppel, even in cases involving different causes of action, if the issue was actually litigated in an earlier proceeding." *Mays v.*

*Envelope House*, No. CIV. A. 86-45, 1987 WL 25631, at *2 (E.D. Ky. Dec. 1, 1987) (citation omitted). VP Louisville objected to each of the Receiver's reports. It clearly litigated (and the state court clearly decided) the propriety of every dollar the Receiver spent, and where the leftover funds should go. With the exception of a portion of the attorney's fees, VP Louisville simply lost. The cash refund of attorney's fees, totaling $67,236.00, was ultimately spent on additional attorney's fees incurred by the Receiver in defending against VP Louisville's incessant motions and in partial repayment of NBH's previous loan to the Receiver. Having actually litigated these issues, resulting in an actual decision adverse to VP Louisville and necessary to the judgment by the state court, VP Louisville's claim is therefore issue precluded.

VP Louisville argues that "[n]one of these motions and resulting orders concerned the turnover of funds on deposit with the Receiver in December 2012 to [VP Louisville] as provided for in the Settlement Agreement." [R. 9 p. 5] Yet the turnover of funds on deposit with the Receiver to VP Louisville was the exact subject of VP Louisville's motions for judgment. The Jefferson Circuit Court denied these motions. As already discussed, not only did the state court decide the sole remaining issue of the disposition of the leftover attorney's fees, but VP Louisville specifically objected to every single one of the Receiver's reports – including the two reports that came after the Payment Date and would have necessarily reflected the sums remaining in the receivership account as of that date.

This issue was also necessary to the state court judgment. VP Louisville cites *Miller* for the proposition that it was not, but *Miller* is distinguishable because in that case, none of the previous court orders ruled on the merits of the issue in question, with one opinion specifically declining to do so. *Miller*, 361 S.W.3d at 875. By contrast, as the Kentucky Court of Appeals made perfectly clear in its opinion affirming the Jefferson Circuit Court, the *only* funds

remaining on deposit with the Receiver at the end of the state court action were the refunded attorney's fees. [R. 5-13 p. 5] Thus, contrary to VP Louisville's assertions, the state court necessarily *did* decide that VP Louisville was not entitled to any of the remaining funds, by denying VP Louisville's motions for judgment entitling it to those funds – the only funds left to fight over. *Contra* R. 9 p. 6. In short, having painstakingly litigated the expenditure of every receivership dollar throughout the entire length of the receivership and beyond, VP Louisville cannot now get a "second bite at the apple."

This case is not like the cases cited by VP Louisville. It is unlike *Yeoman v. Com., Health Policy Bd.*, 983 S.W.2d 459 (Ky. 1998), where issue preclusion did not apply because a new tax law was different from a previous tax law which was the subject of litigation. *Yeoman v. Com., Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998). It is likewise unlike *Specialty Auto Parts USA, Inc. v. Holley Performance Prod., Inc.*, 771 F. App'x 584 (6th Cir. 2019), in which none of the elements of claim preclusion were met. It is true that *Specialty Auto Parts* found that – since a party could not have raised its breach of contract claims for alleged violation of a settlement agreement in the first action – the elements of issue preclusion were necessarily not met. *Specialty Auto Parts USA, Inc.*, 771 F. App'x at 593. But that case did not hold that this would be the case anytime a party sought to apply issue preclusion to a breach of contract claim for alleged violation of a settlement agreement. In light of that, the Court is convinced that the reasoning of *Specialty Auto Parts* as to the application of issue preclusion is simply inapplicable to the facts of this case. *Specialty Auto Parts* involved a breach of contract claim which was predicated upon a violation, years after the fact, of a settlement agreement resolving a closed civil case. But here, while the breach of contract claim is based upon a refusal to disburse certain funds pursuant to a settlement agreement, crucially, the same litigation resolved the very issue of

those funds' proper disbursement. Thus, as in *Bowman v. City of Olmsted Falls*, 756 F. App'x 526, 532 (6th Cir. 2018) (applying Ohio law), the gravamen of this claim is the same as that involved in previous litigation. Under these circumstances, the Court perceives no danger that the application of issue preclusion will "contravene an overriding public policy or result in manifest injustice." *Contra Specialty Auto Parts USA, Inc.*, 771 F. App'x at 593.

Finally, before moving to the other claims, the Court pauses to note that the remainder of the claim for breach of the settlement agreement is premised upon the acts taken by the court-appointed Receiver who has been explicitly relieved of any liability, [R. 5-13 p. 7], which of course fails to state a claim against NBH, an entirely separate-entity.

### B. Other Claims

The remaining claims (tortious interference with prospective business advantage and economic relationships; breach of contract as to the letter agreement; breach of the covenant of good faith and fair dealing; and punitive damages) likewise fail to state a claim, mainly because of the express release contained within the settlement agreement, which provides as follows:

> Upon the timely payment of the Settlement Sum, the Parties agree to release each of their respective directors, officers, employees, attorneys, agents, insurers, representatives, heirs, assigns, affiliates, participants, predecessors, successors, related entities, and subsidiary and parent organizations from any claims, demands, obligations, liabilities of [sic] causes of action relating to the Loan, the Loan Documents, the Kentucky Litigation and/or the Missouri Litigation.

[R. 9-1 p.2]

The action complained of in the count for tortious interference with prospective business advantage is NBH's "initiation of the foreclosure action." [R. 1 p. 8] This is clearly barred under the terms of this express waiver, because it relates to the Loan, the Loan Documents, and the Kentucky Litigation (defined in the settlement agreement as the foreclosure action against Borrower in Kentucky, [R. 9-1 p. 1], i.e., the state court action).

Similarly, the claim for breach of contract as to the letter agreement is barred by this waiver, for the same reason. The conduct that this count complains of is "seeking to appoint a receiver . . . not on . . . [the] approved list." [R. 1 p. 9] The letter agreement is one of the Loan Documents; the appointment of the Receiver was in the course of the Kentucky Litigation (and VP Louisville opposed that appointment vigorously in that litigation), and the reason the Receiver was appointed was VP Louisville's default on the Loan.

VP Louisville expressly states that Count IV, the count for breach of covenant of good faith and fair dealing, "is not a separate cause of action, but is clearly a part of VP's claim for breach of the Settlement Agreement." Since this claim has already been addressed above, this count likewise fails to state a claim upon which relief can be granted.

Finally, as NBH points out, punitive damages are not themselves a standalone claim. *See, e.g., Ammon v. Welty*, 113 S.W.3d 185, 188, 2002 Ky. App. LEXIS 1400, *9-10 (Ky. Ct. App. July 12, 2002) ("the claim for punitive damages cannot succeed since the failure to assert a claim on which actual damages can be awarded precludes [plaintiffs] from seeking punitive damages."). Thus, in the absence of any other predicate claim to which it might attach, the count for punitive damages likewise fails to state a claim upon which relief can be granted.

VP Louisville implicitly cedes that these claims are barred by the waiver, when it argues that these claims can survive if the settlement agreement is "void because NBH is in breach of the Settlement Agreement." [R. 9 p. 12] There are two problems with that argument. First, VP Louisville does not actually claim that the settlement agreement is *void*, merely that it is *voidable*. *See* R. 9 p. 12. The latter is a far cry from the former, even assuming without deciding that the settlement agreement is in fact voidable. Second, there is no predicate breach on the part of NBH to serve as a basis to void the settlement agreement. As explained above, VP

Louisville's claim that NBH is in breach of the Settlement Agreement is partly issue precluded and partly fails to state a claim because it complains about the Receiver's actions, not NBH's actions.

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. The Defendant's **Motion to Dismiss for Failure to State a Claim [R. 5]** is **GRANTED**.

2. A separate Judgement will be entered consistent with this Order.

This the 6th day of November, 2019.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Counsel of record